SUPREME COURT OF ARIZONA
En Banc

GILBERT NAVARRO GALAZ,              )      Arizona Supreme Court
                                   )      No.  CV-03-0180-PR
          Petitioner-Appellant,    )
                                   )      Court of Appeals
                                   )      Division One
               v.                  )      No.  1 CA-CV 02-0674
                                   )
                                   )      Maricopa County
TERRY L. STEWART,                  )      Superior Court
                                   )      No.  CV 2002-009536
          Respondent-Appellee.     )
_____)      **O P I N I O N**

Appeal from the Superior Court in Maricopa County
The Honorable Edward O. Burke, Judge

**AFFIRMED**
_____

Court of Appeals, Division One
Memorandum Decision (filed April 24, 2003)

**VACATED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     by   Susanna C. Pineda, Assistant Attorney General
Attorneys for Respondent-Appellee

SUSAN M. SHERWIN, MARICOPA COUNTY OFFICE
OF THE LEGAL ADVOCATE                                      Phoenix
     by   Thomas J. Dennis, Deputy Legal Advocate
Attorneys for Petitioner-Appellant

Robert Bartels                                              Tempe
Attorney for Amici Curiae
Arizona Justice Project and Fred McNair
_____

**B E R C H**, Justice

¶1      The Arizona Department of Corrections asks this court

to determine whether the commutation of Petitioner Galaz's two

concurrent sentences from "twenty-five years to life" in prison to 19.75 years also converted the manner in which the sentences were to be served from "flat time" to "soft time." We hold that it did not. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003) and Article 6, Section 5(3) of the Arizona Constitution.

### FACTS AND PROCEDURAL BACKGROUND

¶2 In 1987, Gilbert Navarro Galaz was sentenced to serve two concurrent life sentences for two aggravated assaults he committed while on probation for prior felony convictions. The statute under which he was sentenced required that Galaz serve at least twenty-five years before he would be eligible for parole or release on any other basis. *See* A.R.S. § 13-604.02(A), (B) (Supp. 1985); *see also* A.R.S. § 41-1604.09(C) (2004). The statute therefore required that at least twenty-five years of the sentence be served as "flat time." [1]

¶3 In 1993, the legislature amended the sentencing statute. 1993 Ariz. Sess. Laws, ch. 255, § 9 (amending A.R.S. § 13-604.02 (Supp. 1994) (effective Jan. 1, 1994)). The amended statute required that any sentence imposed be served as flat

---

[1] A "flat time" sentence requires that a defendant serve each day of the sentence imposed and renders the defendant ineligible for early release credits. *See Fox v. Ariz. Bd. of Pardons & Paroles,* 149 Ariz. 172, 175-76, 717 P.2d 476, 479-80 (App. 1986) (discussing a similar sentencing provision in A.R.S. § 13-604.01).

time, but reduced the mandatory sentence for a felony committed while the perpetrator was on probation or release from confinement from life to the presumptive sentence authorized for the felony. As a result of the amendment, those who committed crimes while on release status after January 1, 1994, generally received lesser sentences than those whose crimes occurred before 1994.

¶4 To mitigate the disparity in sentences between those who committed crimes before and after 1994, the legislature enacted the Disproportionality Review Act (the "DRA"), which authorized the Arizona Board of Executive Clemency to recommend to the governor commutations of sentences for certain pre-1994 offenses. 1994 Ariz. Sess. Laws, ch. 365, § 1(F)(1) (adding the DRA and providing for its automatic repeal). The Board's recommendations became effective upon the governor's approval or, if the governor failed to act, ninety days after the governor received the recommendation. *See id.* § 1(G). In this case, the Board recommended that each of Galaz's sentences be commuted from life, with the possibility of release after twenty-five years, to 19.75 years. But the governor, through an aide, denied the recommendation.

¶5 Galaz's commutation nevertheless became effective by default, under this court's opinion in *McDonald v. Thomas*, 202 Ariz. 35, 44-46, ¶¶ 29-35, 40 P.3d 819, 828-30 (2002), which

3

held that a rejection not bearing the authorized signature of the governor was ineffective to deny commutation.[2] Because the denial of Galaz's commutation had been signed by the governor's aide, it was invalid. *See id.* at 46, ¶ 35, 40 P.3d at 830 (construing 1994 Ariz. Sess. Laws, ch. 365, § 1(G)).

¶6 Galaz now argues that, in addition to reducing his sentence by a minimum of 5.25 years on each count, the commutation should be interpreted as having changed his sentence from flat time to soft time, rendering him eligible for parole before the end of the 19.75-year commuted term. The trial court held that the commutation did not change the nature of the sentences. The court of appeals reversed, concluding that it lacked the authority to make such a determination, and instructed Galaz to file a petition with the Board of Executive Clemency. We granted the State's petition for review to determine whether the commutation changed the sentences from flat time to soft time.

## DISCUSSION

### A. Standard of Review.

¶7 Whether the commutation converted Galaz's "flat time" sentences to "soft time" involves a question of statutory

---

[2] In *McDonald*, this court held that the grant or denial of commutation, as an official act of the governor, must bear the authorized signature of the governor and be attested by the secretary of state. 202 Ariz. at 44-46, ¶¶ 29-35, 40 P.3d at 828-30.

4

interpretation, which we review de novo.  *See State v. Sepahi*, ___ Ariz. ___, ¶ 2, 78 P.3d 732 (2003).

### B.   Flat Time or Soft Time?

¶8      The governor has the power to grant pardons or commute sentences, but only "upon such conditions and with such restrictions and limitations as may be provided by law."  Ariz. Const. art. 5, § 5; *see also State v. Marquez*, 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980).  The primary statutory limitation on this power is that the governor may act only upon recommendations from the Board of Executive Clemency.  *See* A.R.S. § 31-402(A) (2002).  The recommendation in this case reflected the Board's vote to reduce Galaz's sentences to 19.75 years each, nothing more.  The Board's recommendation is silent regarding any intent to make Galaz eligible for soft time.

¶9      The statute under which Galaz was sentenced, A.R.S. § 13-604.02(A), sheds some light on the legislature's intent with respect to the sentences of those who commit serious crimes while on probation.  Before 1994, the statute subjected such offenders to life sentences and made them eligible for parole only after serving twenty-five years of flat time.  When the legislature amended the statute in 1993, it left intact the requirement that any sentence imposed be served as flat time. *Compare* A.R.S. § 13-604.02(A) (1993) *with* A.R.S. § 13-604.02(A) (1994).

¶10     The following year, the legislature enacted the DRA to help equalize sentences imposed under A.R.S. § 13-604.02 for similar crimes committed before and after 1994. *See* 1994 Ariz. Sess. Laws, ch. 365, § 1(F)(1); *supra* ¶ 4. Yet nothing in the DRA suggests any legislative intent to allow sentence commutations greater than necessary to mitigate the disparity between pre- and post-1994 sentences. Indeed, any further reductions would frustrate the goal of the DRA by re-engendering disparity.

¶11     For that reason, we find unpersuasive Galaz's argument that the Board intended to modify his sentence to "soft time." He acknowledges that those who committed offenses after 1994 remain subject to flat time, but argues that because he committed his crimes before 1994, he is entitled to serve his commuted sentences as soft time, perhaps entitling him to an earlier release than his counterparts who were sentenced under the "softened" version of § 13-604.02(A). Such an ironic result contravenes the purpose of the DRA by re-instilling disparities between commuted pre-1994 sentences and non-commuted post-1994 sentences.

¶12     The DRA itself provides no evidence that the legislature intended such a result. To the contrary, other sentencing provisions reveal the legislature's intent to require sentences for certain acts to be served in full. For example,

6

subsections (C) and (I) of § 41-1604.09 provide that for sentences imposed before January 1, 1994, "a person sentenced pursuant to a statute which requires that a person serve a mandatory minimum term . . . shall not be released until the mandatory minimum portion of the term is served." Galaz's sentence is such a sentence.

¶13     Nothing in the statutes or the commutation changes the nature of Galaz's offenses or the fact that he committed the aggravated assaults while on probation. Even as amended, the sentencing statute still requires flat time for crimes committed while on probation or release from prison. Thus, in keeping with the legislature's goal of ensuring relatively equivalent sentences for relatively equivalent crimes and offenders, we conclude that the commutation in this case was not intended to transform Galaz's sentence from flat time to soft time.[3]

¶14     Although Galaz and amici curiae urge us to do so, we need not decide today whether the DRA authorized the Board to recommend that Galaz's sentence be served as soft time. The fact of the matter is that the Board did not make any such recommendation and Galaz can point to no statute that would

---

[3] The court of appeals remanded the case to the Board for clarification of its intent. Such a resolution is unworkable, however, because the composition of the Board has long since changed, disproportionality review no longer exists, and two governors have assumed office since the one who rendered the decision in this matter.

7

render him eligible for soft time in the absence of such a recommendation. The recommendation sent to the governor shows only that the Board voted to reduce Galaz's sentences from twenty-five to 19.75 years each. Because A.R.S. § 31-402(A) limits the governor's power to commute to those cases recommended by the Board of Executive Clemency, the governor acts — or in cases such as this, fails to act — only upon the recommendations before him or her. In this case, the Board's recommendation gave no hint that any reduction in sentence was intended other than as to the term of years.[4]

**CONCLUSION**

¶15 For the foregoing reasons, we hold that the commutation of Galaz's sentences from twenty-five to 19.75 years did not change his sentences from flat time to soft time. We therefore vacate the decision of the court of appeals and affirm the decision of the trial court.

_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

---

[4] The governor, through an aide, attempted to deny even the reduction in the term of years; Galaz's counsel concedes that the governor surely would not have approved a reduction in the term of years *and* the conversion of the sentence to soft time.

_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice